IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 26-cv-00926-PAB

NORGE CARRALERO SILVERA,

      Petitioner,

v.

JUAN BALTAZAR, Warden of the Denver Contract Detention Facility, Aurora Colorado, in his official capacity,
GEORGE VALDEZ,[1] Field Office Director, Denver Field Office, U.S. Immigration and Customs Enforcement, in his official capacity,
MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security, in his official capacity,
TODD LYONS, Acting Director of Immigration and Customs Enforcement, in his official capacity, and
TODD BLANCHE, Acting Attorney General, U.S. Department of Justice, in his official capacity,

      Respondents.

---

**ORDER**

---

This matter comes before the Court on petitioner Norge Carallero Silvera's

Verified Amended Petition for Writ of Habeas Corpus [Docket No. 12]. Respondents

filed a response.[2]  Docket No. 18.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), George Valdez is automatically substituted as a party in this action.

[2] Respondents filed two responses, which are identical to each other.  Docket Nos. 18 and 19.  The Court presumes this double-filing was in error and cites exclusively to the response at Docket No. 18.

## I.  BACKGROUND[3]

Petitioner is a citizen of Cuba.  Docket No. 1 at 2, ¶ 1.  Petitioner fled Cuba in September 2023, after receiving repeated beatings at the hands of Cuban police and security officials for his participation in demonstrations against the Cuban regime.  *Id.* at 6, ¶ 14.  He arrived at the Texas border on December 28, 2023 and surrendered to a Border Patrol agent shortly after crossing the Rio Grande.  *Id.*  He was released almost immediately on conditional parole, and removal proceedings were initiated.  *Id.*  Since his release, petitioner has not engaged in any criminal conduct, has appeared at immigration court in Miami for each scheduled hearing, has timely submitted an asylum application, has obtained a social security card, and was gainfully employed.  *Id.*

On November 14, 2025, petitioner attended a scheduled, routine immigration court hearing in Miami.  *Id.*, ¶ 15.  At that hearing, with no advance notice, the Department of Homeland Security ("DHS") moved to dismiss his pending removal proceedings for unknown reasons.  *Id.*  Upon dismissal of the removal proceedings, petitioner was taken into custody and was transferred from Miami to the Denver Contract Detention Facility in Aurora, Colorado.  *Id.*  After over a month of detention, DHS initiated new removal proceedings against petitioner on December 22, 2025. *Id.*, ¶ 16.  On February 19, 2026, petitioner requested a bond hearing.  *Id.*  A bond hearing was held on February 25, 2026, wherein the immigration judge granted bond in the amount of $7,500.  *Id.* at 6-7, ¶¶ 16-17.  The day after the immigration judge set bond, Immigration and Customs Enforcement ("ICE") filed a Form E-43 invoking the automatic stay.  *Id.* at 7, ¶ 18.  Petitioner's family attempted to post bond on February 26, 2026

---

[3] The following facts are taken from petitioner's amended habeas petition, Docket No. 12, and are undisputed unless otherwise noted.

and March 11, 2026, but were unable to do so because of the automatic stay. *Id.* Petitioner continues to be detained. *Id.* at 7-8, ¶ 19. Due to his detention, petitioner is detained more than a thousand miles away from his family and friends, including his fiancée. *Id.* Petitioner has also been prevented from continuing his gainful employment. *Id.*

On March 5, 2026, petitioner, representing himself pro se, filed a petition for habeas corpus. Docket No. 1. Magistrate Judge Richard T. Gurley ordered petitioner to cure deficiencies in the petition. Docket No. 5. Petitioner filed another habeas petition, Docket No. 6, which was also found to be deficient. Docket No. 10. On April 29, 2026, petitioner retained counsel, who entered an appearance. Docket No. 11. Petitioner filed an amended petition for habeas corpus. Docket No. 12. Petitioner brings claims that use of the automatic stay provision violated his procedural due process rights, his substantive due process rights, and the Administrative Procedure Act ("APA"). *Id.* at 21-24, ¶¶ 50-69. Respondents filed a response. Docket No. 18.

## II. ANALYSIS

Under 8 U.S.C. § 1226(a), noncitizens may be detained pending a decision whether they are to be removed from the United States. 8 U.S.C. § 1226(a). Noncitizens detained pursuant to § 1226 have the right to seek release on bond. 8 U.S.C. § 1226(a)(2). DHS may appeal a bond determination to the Board of Immigration Appeals ("BIA"). 8 C.F.R. § 1003.19(f). Moreover, the automatic stay provision at 8 C.F.R. § 1003.19(i)(2) states that:

> In any case in which DHS has determined that an alien should not be released or has set a bond of $10,000 or more, any order of the immigration judge authorizing release (on bond or otherwise) shall be stayed upon DHS's filing of a notice of intent to appeal the custody redetermination (Form EOIR–43) with the immigration court within one

business day of the order, and, except as otherwise provided in 8 CFR 1003.6(c), shall remain in abeyance pending decision of the appeal by the Board.  The decision whether or not to file Form EOIR–43 is subject to the discretion of the Secretary.

8 C.F.R. § 1003.19(i)(2).  Petitioner argues that respondents violated his procedural due process rights through their use of the automatic stay provision.  Docket No. 12 at 21-22, ¶¶ 50-57.  Petitioner states that the correct method for determining whether his due process rights have been violated is by applying the three-factor test set out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  *Id.*, ¶ 52.  In response, respondents argue that the "notice and opportunity to be heard" test should be utilized.  Docket No. 18 at 7.  Respondents derive this test from a recent Supreme Court case analyzing the constitutionality of removal under the Alien Enemies Act, 50 U.S.C. § 21, not the constitutionality of continued detention, in which the Court stated that "detainees are entitled to notice and opportunity to be heard appropriate to the nature of the case." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (citation and internal quotations omitted).  Respondents argue that the appeals process regarding petitioner's bond constitutes sufficient due process in this case and provides him with both notice and the opportunity to be heard.  Docket No. 18 at 7-8.

Respondents made the same argument in *Rodriguez Alfaro v. Baltazar*, No. 26-cv-01200-PAB, 2026 WL 935969, at *2-3 (D. Colo. Apr. 7, 2026).  The Court disagreed with the argument, finding that the *Mathews* test governed whether a noncitizen's due process rights are violated by use of the automatic stay provision.  *Id.* at *2.  Like in *Rodriguez Alfaro*, respondents assert that "[t]he Supreme Court has never used the framework set forth in *Eldridge* to evaluate due process for noncitizens."  Docket No. 18 at 8; *see also Rodriguez Alfaro*, 2026 WL 935969, at *2.  Respondents cite *Landon v.*

4

*Plasencia*, 459 U.S. 21, 34 (1982), for the proposition that the procedural due process analysis regarding noncitizens is deferential to the government.  Docket No. 18 at 8. Yet, in *Landon*, the Supreme Court applied the *Mathews* factors to evaluate whether a noncitizen received appropriate due process—the very thing respondents claim the Supreme Court has never done.  *Landon*, 459 U.S. at 34.  Respondents also cite *Miranda v. Garland*, 34 F.4th 338, 362, 364 (4th Cir. 2022), for the proposition that petitioner is receiving sufficient notice through the regulatory process for evaluating his bond.  Docket No. 18 at 7.  In *Miranda*, however, the Fourth Circuit utilized the *Mathews* test to evaluate a due process challenge to a noncitizen detained under § 1226(a).  *See Miranda*, 34 F.4th at 358-59 ("Both [petitioner] and the government agree that the *Mathews* test governs.  Furthermore, the First and Ninth Circuits have employed the *Mathews* balancing test to evaluate due process challenges to the procedures used by the government under § 1226(a). . . .  Therefore, we will apply it to [petitioner's] due process claims.").  The Court will follow the weight of authority, including *Rodriguez Alfaro*, and analyze petitioner's procedural due process claim under the test set out in *Mathews*.

Under *Mathews*, a court weighs three factors in evaluating due process claims: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probative value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

5

Petitioner argues that he has a significant liberty interest in release from detention.  Docket No. 12 at 22, ¶ 53.  The interest in being free from physical detention "is the most elemental of liberty interests."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (noting that freedom from physical restraint "lies at the heart of the liberty that [the Due Process] Clause protects.").  Petitioner notes that he has been in physical detention for over five months, despite not having been accused of any crime.  Respondents argue that petitioner's interest is not significant because his continued detention might not be prolonged. Docket No. 18 at 8-9.  Specifically, respondents note that the automatic stay provision expires after 90 days if the BIA has not yet ruled.  *Id.* at 8.  However, there are several possibilities for the detention being extended after the 90-day period lapses, including the stay being extended due to custody proceedings.  *See Rivas v. Baltazar*, No. 26-cv-00442-SKC, 2026 WL 444732, at *1 n.2 (D. Colo. Feb. 17, 2026); *see also* 8 C.F.R. § 1003.6(c)(5)-(d).  Thus, petitioner's detention may continue for longer than 90 days. Moreover, even if petitioner would only be detained for an additional 90 days, the Court finds that freedom from 90 days of physical detention still constitutes a significant private interest, particularly in light of the fact that petitioner has already been detained for over five months.  Thus, the first *Mathews* factor weighs in favor of petitioner.  *See Merchan-Pacheo*, 2026 WL 88526, at *14 (finding that the first *Mathews* factor weighed in favor of petitioner after the invocation of the automatic stay provision); *Rivas*, 2026 WL 444732, at *3 (same).

Second, there is a high risk of erroneous deprivation of petitioner's liberty interest.  "The risk of deprivation is high because the only individuals subject to the

automatic stay are those who, by definition, prevailed at their bond hearing." *Merchan-Pacheo*, 2026 WL 88526, at *15 (citation and internal quotations omitted).  Here, an immigration judge has determined that petitioner is not a significant flight risk or danger to the community and has granted bond in the amount of $7,500.  Docket No. 12 at 7, ¶ 17.  However, the automatic stay provision allows DHS to unilaterally stay the bond determination, despite not requiring "DHS to consider or demonstrate any individualized facts or show a likelihood of success on the merits." *Merchan-Pacheo*, 2026 WL 88526, at *15 (citing 8 C.F.R. § 1003.19(i)(2)).  Accordingly, the second *Mathews* factor weighs in favor of petitioner.

Finally, respondents argue that the government has a legitimate interest in maintaining custody over petitioner because "release could render the review process illusory."  Docket No. 18 at 9.  In particular, respondents argue that many noncitizens who are released from custody do not show up to scheduled removal hearings after their release.  *Id.* at 9-10.  While the government has an interest in preventing flight risks, an immigration judge has already determined that a $7,500 bond would effectively ameliorate that risk.  As one court in this district noted, "this interest rings hollow given that . . . this automatic stay is being applied only to those individuals 'who an Immigration Judge has determined [*do*] *not pose a public safety threat or a risk of flight* sufficient to warrant continued confinement.'" *Rivas*, 2026 WL 444732, at *4 (quoting *Merchan-Pacheo*, 2026 WL 88526, at *16).  Thus, the third *Mathews* factor weighs in favor of petitioner.  Accordingly, each *Mathews* factor weighs in favor of petitioner, and the Court finds that petitioner's continued custody violates his procedural due process

rights.[4]  Notably, this finding follows the weight of authority since "[a]t least 50 district court decisions across the United States . . . have found that DHS's application of the automatic stay pursuant to 8 C.F.R. § 1003.19(i)(2) violates a non-citizen's due process under the Fifth Amendment."  *M.P.L. v. Arteta*, 2025 WL 3288354, at *7 (S.D.N.Y. Nov. 25, 2025) (collecting cases).

## III.  CONCLUSION

Therefore, it is

**ORDERED** that petitioner Norge Carallero Silvera's Verified Amended Petition for Writ of Habeas Corpus [Docket No. 12] is **GRANTED**.  It is further

**ORDERED** that, upon petitioner posting the $7,500 bond set by the immigration judge, respondents shall immediately release petitioner from custody.  It is further

**ORDERED** that, on or before **May 18, 2026**, the parties shall file a status report informing the Court whether bond was posted and whether petitioner remains in custody.

DATED May 12, 2026.

BY THE COURT:

PHILIP A. BRIMMER
United States District Judge

---

[4] Because the Court will grant habeas relief on the procedural due process claim, it need not address petitioner's substantive due process claim or his APA claim.  *See Merchan-Pacheo*, 2026 WL 88526, at *16 ("Petitioner also asserts that the automatic stay violates his substantive due process rights.  Because the court has already awarded Petitioner the relief he requests, the court need not reach this issue.").